1  Stephen G. Recordon (SBN 91401)
   **RECORDON & RECORDON**
2  225 Broadway, Suite 1900
   San Diego, CA 92101
3  Phone: (619) 232-1717
   Facsimile: (619) 232-5325
4  Email: sgrecordon@aol.com

5  Clinton Rooney (SBN 221628)
   **ROONEY & LICKEL**
6  1102 Cesar E Chavez Parkway
   San Diego, CA 92113
7  Tel: (619) 573-9547
   Email: rooneycdi@gmail.com

8  Matthew B. Butler (SBN 201781)
   **NICHOLAS & BUTLER, LLP**
9  225 Broadway, 19th Floor
   San Diego, California 92101
10 Telephone: (619) 325-0492
   Facsimile: (619) 325-0496
11 Email: mbutler@nblaw.org

12 Attorneys for Plaintiffs

13                **UNITED STATES DISTRICT COURT**

14              **SOUTHERN DISTRICT OF CALIFORNIA**

15

16 JESUS MARTINEZ, an individual, on behalf of    ) CASE NO.: 10CV1625-DMS-MDD
   himself and all others similarly situated,      )
17                                                  ) **MEMORANDUM OF POINTS AND**
                    Plaintiffs,                     ) **AUTHORITIES IN OPPOSITION TO**
18                                                  ) **DEFENDANT CACH, LLC'S MOTION**
   vs.                                              ) **TO DISMISS PURSUANT TO RULE**
19                                                  ) **12(B)(1) AND 12(B)(6)**
   CACH, LLC, a Colorado Limited Liability         )
20 Company; SQUARETWO FINANCIAL                     )
   COMMERCIAL FUNDING CORPORATION,                  )
21 a Delaware Corporation, and DOES 2 through       )
   25,                                              )
22                                                  )
                    Defendant.

23

24      Plaintiff JESUS MARTINEZ (hereinafter "Martinez") respectfully submits this

25 Memorandum and Points of Authorities in Opposition to Defendant CACH, LLC's (hereinafter

26 "CACH") Motion to Dismiss Pursuant to Rule12(b)(1) and 12(b)(6).

27 ///

28 ///

   ///

─────────────────────────────────────────────

1

# TABLE OF CONTENTS

2

I.    INTRODUCTION ................................................................................................ 2

3

II.   STATEMENT OF FACTS ................................................................................. 3

4

III.  ARGUMENT........................................................................................................ 3

5

   A.    **Defendant's Rule 68 Offer of Judgment Does Not Render Plaintiff's Action Moot
Because Plaintiff Brings Suit in a Representative Capacity** ............................................. 3

6

7

     i. The Third Circuit Holds that a Class Action is Not Moot When the Rule 68 Offer is Made
to the Class Representative of the Putative Class ....................................................................... 5

8

     ii. The Tenth Circuit Holds that a Class Action is Not Moot When the Rule 68 Offer is
Made to the Class Representative of the Putative Class ............................................................ 5

9

10

     iii. The Seventh Circuit Holds that a Class Action is Not Moot When the Rule 68 Offer is
Made to the Class Representative of the Putative Class ............................................................ 6

11

     iv. The Fifth Circuit Holds that a Class Action is Not Moot When the Rule 68 Offer is Made
to the Class Representative of the Putative Class ....................................................................... 6

12

13

     v. A Second Circuit District Court Holds that a Class Action is Not Moot When the Rule 68
Offer is Made to the Class Representative ................................................................................... 7

14

     vi. Only in Limited Circumstances Do Courts Depart From the Holding that A Rule 68
Offer Moots a Plaintiff's Action ................................................................................................... 7

15

     vii. The California Fair Debt Collection Practices Act Does Not Prevent Class Relief ......... 8

16

   B.    **The *Rooker-Feldman* Doctrine Does Not Preclude This Action** ...................................... 8

17

     i.    The *Rooker-Feldman* Doctrine Does Not Apply Here Because Plaintiffs are Not
Contesting Entry of Judgment, But Even If They Were, Defendant Has Not Provided
Evidence of Universal State Court Judgments. .......................................................................... 8

18

19

     ii.   *Rooker-Feldman* Does Not Apply To FDCPA Suits Based on Collections Efforts Not
Linked to a State Court Judgment ................................................................................................ 9

20

     iii.  Even if *Rooker-Feldman* Did Apply to Some Claims, It Is Not a Basis for Dismissal
of This Action.................................................................................................................................. 12

21

22

   C.    **Defendant's Motion to Dismiss Pursuant to Rule 12(B)(6) Must Be Denied Because
Plaintiff Pleads a Sufficient Facts for Each Cause of Action.** .............................................. 13

23

     i.    Defendant's Reliance on *Patterson* and *Seror* is Misguided ......................................... 15

24

     ii.   Plaintiff's Complaint Pleads Sufficiently Particular Facts to Support a Claim for
Constructive Fraudulent Transfer................................................................................................ 17

25

26

     iii.  Plaintiff's Complaint Pleads Sufficiently Particular Facts to Support a Claim for Alter
Ego Under the Single Enterprise Doctrine ................................................................................. 18

27

28

---

1

**D.   In the Alternative, Should the Court Find Any Pleading Inadequacies, The Court Should Grant Plaintiff Leave to Amend**................................................................................. 20

2

**IV.  CONCLUSION** ....................................................................................................... 21

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TABLE OF CONTENTS

# TABLE OF AUTHORITIES

## CASES

*Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541, 548 (N.D.Cal., 2005) ........................................ 8

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ........................................................ 4

*Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal.App.2d 825, 838 (1962)................. 18, 19

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ............................................................ 14

*Blaxill v Arrow Financial Services, LLC*, 2011 US Dist LEXIS 41010, 2 (N.D. Cal. 2011) ........ 11

*Bowoto v. Chevron Texaco Corp.,* 312 F.Supp.2d 1229 (N.D. Cal. 2004) .................................... 20

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996) ............................................ 14

*Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir. 2010) ........................................................ 10

*Carroll v. United Compucred Collections, Inc.*, 399 F.3d 620 (6th Cir. 2005) ............................... 7

*Carvana v. MFG Financial*, 547 F. Supp. 2d 1219, 1223-1226 (D. Utah 2008) .......................... 12

*Chung Hak Hong v. U.S. Dept. of Homeland Security Citizenship and Immigration Services*, 662 F.Supp.2d 1195, 1198 (C.D. Cal. 2009) .................................................................................. 20

*Cook Inlet Treaty Tribes v. Shalala*, 166 F.3d 986, 989 (9th Cir. 1999) ........................................ 4

*Coulter v. Murrell et al.*, 2010 US Dist LEXIS 75152, 9-10 (S.D. Cal. 2010) .............................. 12

*Deposit Guaranty Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326 , 339 (1980) ....................... 4

*Druther v. Dean William Hamilton et al*, 2009 U.S. Dist. LEXIS 112187, 8-9 (W. Dist. Wash 2009)............................................................................................................................... 10, 11, 12

*Exxon Mobil Corporation v. Saudi Basic Industries Corporation*, 544 U.S. 280, 284 (2005) ...................................................................................................................................... 9, 10, 13

*GATX/Airlog Co. v. U.S. Dist. Court for Northern Dist. of California*, 192 F.3d 1304, 1306 (9th Cir. 1999)......................................................................................................................................... 4

*Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) ................................... 13

*In Re Pintlar Corp.,* 124 F.3d 1310, 1312 (9th Cir. 1997).............................................................. 4

*Institute of Veterinary Pathology, Inc. v. California Health Laboratories, Inc.* 116 Cal.App.3d 111, 119 (1981) ........................................................................................................................... 18

*Jenkins v. General Collection Co*, 538 F Supp 2d 1165, 1171-1172 (D. Neb. 2008).............. 11, 12

*Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004).................................................... 10

*Lange v CIR Law Offices*, 2010 US Dist LEXIS 63419, 5 (S.D. Cal. 2010) ................................. 12

*Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990).................................................................... 4

*Lewis v. Telephone Employees Credit Union,* 87 F.3d 1537, 1545 (9th Cir. 1996)...................... 14

*Lucero v. Bureau of Collection Recovery, Inc.,* 2011 WL 1184168 (10th Cir. 2011) .................... 6

*McDonald v. Bonded Collectors, L.L.C.,* 233 F.R.D. 576 (S.D.Cal., 2005) ................................... 8

*Meadows v. Emett & Chandler,* 99 Cal.App.2d 496, 499 (1950) ............................................... 18

*Mendiondo v. Centinela Hosp. Medical Center,* 521 F.3d 1097, 1104 (9th Cir. 2008)................. 14

*Naranjo v Universal Surety of America,* 679 F. Supp. 2d 787, 793 (S.D. Tex. 2010)................... 12

*Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001) ........................................................... 13, 14

*Patterson v Missler,* 238 Cal.App.2d 759, 763 (1965)........................................................... 14, 15

*Sandoz v. Cingular Wireless LLC,* 553 F.3d 913, 920 (5th Cir. 2008) ........................................ 6, 7

*Schaake v. Risk Management Alternatives, Inc.,* 203 F.R.D. 108 (S.D.N.Y., 2001) ...................... 7

*Secor v Stone,* 2011 Bankr. LEXIS 291 (C.D. Cal. 2011) .................................................... 14, 16

*Senftle v. Landau,* 390 F. Supp. 2d 463 (D. MD 2005)............................................................ 12

*Senftle v. Landau,* 390 F. Supp.2d 463 (D. Md. 2005)............................................................ 11

*Sonora Diamond Corp. v. Superior Court,* 83 Cal.App.4th 523, 538, 99 Cal.Rptr.2d 824 (2000) 18

*Susman v. Lincoln American Corp.,* 587 F.2d 866 (7th Cir. 1978).............................................. 6

*Talbot v. Fresno-Pacific Corp.* 181 Cal.App.2d 425, 432 (1960) .......................................... 18, 19

*Todd v. Weltman, Weinberg & Reis Co., L.P.A.,* 434 F.3d 432 (6th Cir. 2006) ........................... 11

*Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc.,* 99 Cal.App.4th 228, 244-245 (2002) ................... 18

*Weiss v. Regal Collections,* 385 F.3d 337, 347-48 (3rd Cir. 2004)................................................ 5

*Wolfson v. Brammer,* 616 F.3d 1045, 1053 (9th Cir. 2010)......................................................... 4

*Zimmerman v. The CIT Group, Inc. et al.,* 2008 US Dist LEXIS 108473, 31-21 (D. Colo. 2008) 12

**STATUTES**

15 U.S.C. §§ 1692 ................................................................................................................. 2

15 U.S.C. § 1692k(a)(2)(B)................................................................................................... 11

Cal. Civ. Code § 3439 .......................................................................................................... 2

Cal. Civ. Code §§ 1788-1788.32............................................................................................ 2

**RULES**

Fed. R. Civ. P. 8(a)............................................................................................................... 13

Fed. R. Civ. Pro. 68(a)...................................................................................................4

Fed. R. Civ. Pro. 68(d) ..................................................................................................4

TABLE OF AUTHORITIES

# I.

## **INTRODUCTION**

Defendant CACH, LLC ("Defendant" or "CACH") violated the federal Fair Debt Collection Practices Act (15 U.S.C. §§ 1692 et seq.) (hereinafter "FDCPA") and the California Rosenthal Fair Debt Collection Practices Act (Cal. Civil Code §§ 1788-1788.32) (hereinafter "Rosenthal Act") when, as a custom and practice, it sued class members for excessive interest rates it did not have a legal right to collect. On or about April 4, 2001, Plaintiff filed a First Amended Complaint ("FAC") further alleging Actual Fraudulent Transfer (Cal. Civ. Code § 3439), Constructive Fraudulent Transfer (Cal. Civ. Code § 3439), and Alter Ego. Plaintiff Jesus Martinez ("Mr. Martinez") brings this action to stop the illegal practice and recover damages for the class of consumers who have been wronged by Defendants' unlawful conduct.

On or about April 25, 2011, CACH filed a Motion to Dismiss under Rule 12(b)(1) and 12(b)(6). The Court should deny Plaintiffs motion to dismiss in its entirety. Plaintiff's Complaint is not moot due to Defendant's offer for judgment under Rule 68. The offer was made only to Plaintiff, individually, not to a class. The offer was made prior to the filing, briefing or consideration by the Court of any class certification motion. Under these circumstances class claims are not precluded because of a Rule 68 offer of judgment.

Defendant's motion to dismiss on grounds of the *Rooker-Feldman* doctrine is equally meritless. Plaintiff is not challenging any state court judgments that Defendant has obtained against the putative class members. Defendant fails to show evidence of the state court judgments sufficient to utilize *Rooker-Feldman*. Even if Defendant had shown some evidence of the state court judgments, there are not judgments against the all putative class members, therefore Defendant has no grounds to dismiss the class action as a whole.

Finally, Defendant's Rule 12(b)(6) claims should fail because Plaintiffs' Complaint adequately pleads claims for fraudulent transfer, constructive fraudulent transfer and alter ego. Therefore, the Court should deny Defendant's Motion to Dismiss in its entirety.

## II.

## STATEMENT OF FACTS

Defendant CACH, LLC violated the FDCPA and the Rosenthal Act when as a custom and practice it sued class members for excessive interest rates it did not have a legal right to collect. Sometime before December 21, 2009, Plaintiff is alleged to have incurred certain financial obligations to Bank of America, NA. Defendant sued Mr. Martinez in California Superior Court (Case No. 37-2009-00062391-CL-CL-NC) for common counts based upon an alleged past due balance of revolving credit with Bank of America. The unpaid debt was assigned, purchased or transferred in some way to Defendant for purposes of collection. Defendant's complaint illegally claimed a 24.5 percent fixed interest rate. The FDCPA and Rosenthal Act prevent Defendant from claiming a fixed interest rate greater than the legal rate of 10 percent with a revolving credit account that bears a variable interest rate. Defendant illegally uses the custom and practice of claiming inflated and improper fixed interest rates in court actions filed against California debtors who were sued for collection of such debts.

As the damages in this action are pinned upon the defendant's net worth, the parties engaged in informal discovery of Defendant CACH's financials, overseen by Magistrate Judge Adler. The documents given to the Plaintiff by CACH demonstrated some striking and unusual financial entries that imply the existence of a fraudulent transfer or transfers totaling at least $248 million in assets from CACH, the current sole named defendant, by and/or through to its parent SquareTwo and/or others so that CACH could be unable to adequately cover any liabilities, including damages in this action and show a zero or negative net worth. Such transfers are even subtly acknowledged in SquareTwo's SEC Form S-4 filing of on or around November 2010.

## III.

## ARGUMENT

A.    **Defendant's Rule 68 Offer of Judgment Does Not Render Plaintiff's Action Moot Because Plaintiff Brings Suit in a Representative Capacity**

Article III of the United States Constitution prohibits federal courts from hearing cases which are moot, that is, which are not based on an "actual, ongoing cases or controversies."

3

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

3:10-cv-01625-DMS-JMA

1  *Wolfson v. Brammer*, 616 F.3d 1045, 1053 (9th Cir. 2010), quoting *Lewis v. Cont'l Bank Corp.*,

2  494 U.S. 472, 477 (1990).   Mootness can be "characterized as the doctrine of standing set in a

3  time frame: The requisite personal interest that must exist at the commencement of the litigation

4  (standing) must continue throughout its existence (mootness)." *Cook Inlet Treaty Tribes v.*

5  *Shalala*, 166 F.3d 986, 989 (9th Cir. 1999).   A case is moot only if interim events have

6  completely and irrevocably eradicated the effects of an allegedly improper ruling. *See In Re*

7  *Pintlar Corp.*, 124 F.3d 1310, 1312 (9th Cir. 1997). The party asserting mootness has the heavy

8  burden of establishing that there is no effective relief remaining for a court to provide.

9  *GATX/Airlog Co. v. U.S. Dist. Court for Northern Dist. of California*, 192 F.3d 1304, 1306 (9th

10  Cir. 1999).   Defendant CACH asserts that Plaintiffs' action is now moot because on or about

11  January 21, 2011, CACH tendered an offer of judgment to Martinez pursuant to Rule 68 of the

12  Federal Rules of Civil Procedure. (Defendant's Motion to Dismiss, ¶ 1.4)

13        Federal Rule of Civil Procedure 68 allows a defendant to "serve on an opposing party an

14  offer to allow judgment on specified terms, with the costs then accrued." Fed. R. Civ. Pro. 68(a).

15  If, within 14 days, the offer is accepted, either party may file a notice of acceptance, and the Clerk

16  must enter judgment. *Id.*  If the offer is not accepted, however, and the judgment that the offeree

17  finally obtains is not more favorable than the unaccepted offer, the offeree is required to pay costs

18  incurred by the defendant after the Rule 68 offer was made. Fed. R. Civ. Pro. 68(d).

19        In the class action context, a Rule 68 offer to a class representative prior to class

20  certification does not render the case moot.  This reasoning is grounded in the public policies

21  behind class actions.  The core principle of the "class action mechanism is to overcome problem

22  that small recoveries do not provide incentive for any individual to bring a solo action prosecuting

23  his or her rights; class actions solve this problem by aggregating relatively paltry potential

24  recoveries into something worth someone's, usually an attorney's, labor." *Amchem Products, Inc.*

25  *v. Windsor*, 521 U.S. 591, 617 (1997).  In an effort to preserve this core principle, in the context

26  of Rule 68 the court in *Deposit Guaranty Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326 , 339

27  (1980) (emphasis added) held:

28

1

2

3

4

Requiring multiple plaintiffs to bring separate actions, **which effectively could be "picked off" by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions**; moreover it would invite waste of judicial resources by stimulating successive suits brought by others claiming aggrievement.

5      In line with the above logic, the court in *Roper* further held that "neither the rejected

6 tender nor the dismissal of the action over plaintiffs' objections mooted the plaintiffs' claim on the

7 merits so long as they retained an economic interest in class certification." *Roper*, *supra*, 445

8 U.S. at 333. Specifically within the context of the FDCPA, districts throughout the country have

9 come down squarely in support of the absence of mootness when a Rule 68 offer is made to the

10 representative of the putative class.

11

12

         i.     <u>The Third Circuit Holds that a Class Action is Not Moot When the Rule 68 Offer is Made to the Class Representative of the Putative Class</u>

13      Guided by the holding in *Roper*, the Third Circuit held that in the FDCPA context an offer

14 of judgment, that would otherwise moot an individual's claim for statutory damages, does not

15 moot the action when made to the representative of the putative class. *Weiss v. Regal Collections*,

16 385 F.3d 337, 347-48 (3rd Cir. 2004). The court in *Weiss* concluded that the district court should

17 have allowed named plaintiff to file a class certification motion, which would have related back to

18 filing of complaint. *Id.* at 349. The court arrived at this conclusion by acknowledging that

19 representative actions are fundamental to the statutory structure of the FDCPA. *Id.* at 345. As

20 such, "lacking this procedural mechanism, meritorious FDCPA claims might go unredressed

21 because the awards in an individual case might be too small to prosecute an individual action."

22 *Id.* Therefore, upholding Defendant's contention regarding the relationship between Rule 68 and

23 Rule 23 would allow violators of Federal law "to tender the statutory amount of damages to a

24 named plaintiff, derailing a putative class action and frustrating, the goals and enforcement

25 mechanism of the FDCPA." *Id.*

26

27

         ii.     <u>The Tenth Circuit Holds that a Class Action is Not Moot When the Rule 68 Offer is Made to the Class Representative of the Putative Class</u>

28

---

5

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

3:10-cv-01625-DMS-JMA

1    The logic of *Weiss* was further validated by the Tenth Circuit in *Lucero v. Bureau of*
2  *Collection Recovery, Inc.*, 2011 WL 1184168 (10th Cir. 2011). Although not yet reported due to
3  its recent publication, the court in *Lucero* applied the logic of the Third Circuit and held that "a
4  nascent interest attaches to the proposed class upon the filing of a class complaint such that a
5  rejected offer of judgment for statutory damages and costs made to a named plaintiff does not
6  render the case moot under Article III." *Lucero, supra,* 2011 WL 1184168 at 9. Therefore, a
7  named plaintiff in a "proposed class action for monetary relief may proceed to seek timely class
8  certification where an unaccepted offer of judgment is tendered in satisfaction of the plaintiff's
9  individual claim before the court can reasonably be expected to rule on the class certification
10  motion." (*Id.* at 10.)

11          iii.    The Seventh Circuit Holds that a Class Action is Not Moot When the Rule
                    68 Offer is Made to the Class Representative of the Putative Class
12

13    The Seventh Circuit applied the same rational as articulated in *Susman v. Lincoln*
14  *American Corp.*, 587 F.2d 866 (7th Cir. 1978). The court in *Susman* held that a "case does not
15  become moot merely because of the tender to the named plaintiffs of their individual money
16  damages." *Susman, supra,* 587 F.2d at 870. As such, the district court should consider class
17  certification prior to deciding whether or not the case is mooted by the tender. *Id.* Susman stands
18  for the notion that arguing that "a defendant may short-circuit a class action by paying off the
19  class representatives either with their acquiescence or, as here, against their will, deserves short
20  shrift. Indeed, were it so easy to end class actions, few would survive. . . . By the very act of
21  filing a class action, the class representatives assume responsibilities to members of the class.
22  They may not terminate their duties by taking satisfaction; a cease-fire may not be pressed upon
23  them by paying their claims." *Id.* at 870-71.

24          iv.     The Fifth Circuit Holds that a Class Action is Not Moot When the Rule 68
                    Offer is Made to the Class Representative of the Putative Class
25

26    In *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 920 (5th Cir. 2008), the Fifth circuit
27  undertook a similar analysis in the context of the Federal Labor Standards Act ("FLSA"). In
28  *Sandoz,* the court recognized that allowing a defendant to moot a representative plaintiff's claim

through a Rule 68 offer of judgment would effectively nullify the possibility of obtaining class certification. *Sandoz, supra,* 553 F.3d at 920.   Although the holding in *Sandoz* focused on the FLSA the court felt that:

> "In the Rule 23 class action context, the differences between class actions and FLSA § 216(b) collective actions do not compel a different result regarding whether a certification motion can "relate back" to the filing of the complaint. The status of a case as being an "opt in" or "opt out" class action has no bearing on whether a defendant can unilaterally moot a plaintiff's case through a Rule 68 offer of judgment. Although the differences between Rule 23 class actions and FLSA § 216(b) collective actions alter the conceptual mootness inquiry, each type of action would be rendered a nullity if defendants could simply moot the claims as soon as the representative plaintiff files suit." (*Id.*)

v.   A Second Circuit District Court Holds that a Class Action is Not Moot When the Rule 68 Offer is Made to the Class Representative

Finally, in *Schaake v. Risk Management Alternatives, Inc.*, 203 F.R.D. 108 (S.D.N.Y., 2001), the court held that defendant's offer of judgment to named plaintiff who filed class action complaint alleging violations of the Fair Debt Collection Practices Act (FDCPA) did not render action moot, even assuming that it provided full relief available under the FDCPA. *Schaake, supra,* 203 F.R.D. at 110-111.  In reaching this conclusion the court took note that "it has long been recognized that Rule 68 Offers of Judgment have no applicability to matters legitimately brought as class actions pursuant to Rule 23." *Id.* at 111.   The court reasoned that applying Rule 68 in the class action context would "allow defendants to essentially opt-out of Rule 23, by allowing a defendant to avoid liability for class wide relief, which could be prevented by the mere service of a Rule 68 offer at the outset of the case." *Id.* at 112.

vi.   Only in Limited Circumstances Do Courts Depart From the Holding that A Rule 68 Offer Moots a Plaintiff's Action

When districts have departed from the above logic they do so in only very limited circumstances.  For example, in *Carroll v. United Compucred Collections, Inc.*, 399 F.3d 620 (6th Cir. 2005), the Sixth Circuit found that named Plaintiff's action was mooted by a Rule 68 offer of judgment in the FDCPA. *Carroll, supra,* 399 F.3d at 625.  However, there were very specific

circumstances: (1) the debt collector offered judgment to consumers and members of the putative class, if certified; (2) the tender of judgment was made after the class certification motion had been filed and fully briefed; and (3) the magistrate judge had issued a recommendation that the class be certified.  *Id.*  This scenario could not be further away from the facts of this case. Defendant seeks to apply Rule 68 prior to this Court's even considering class certification.  As articulated by the jurisdictions above, the application of Rule 68 at this stage undermines core class action principles.

> vii.   The California Fair Debt Collection Practices Act Does Not Prevent Class Relief

In a final attempt to undermine the inevitable class certification, Defendant makes a passing reference to the contention that the California Fair Debt Collection Practices Act ("CA FDCPA" or "Rosenthal Act") prohibits class action relief.   The Ninth Circuit expressly disregarded this contention when they held "if a defendant can be found to violate CA FDCPA when he violates FDCPA, it is logical to conclude that he would then be subject to the same remedies afforded to a plaintiff in FDCPA."  *Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541, 548 (N.D.Cal., 2005); See also *McDonald v. Bonded Collectors, L.L.C.*, 233 F.R.D. 576 (S.D.Cal., 2005) (holding that the Rosenthal act expressly provided that debt collectors were subject to same remedies available under federal Fair Debt Collection Practices Act, which expressly included class actions)

**B.    The *Rooker-Feldman* Doctrine Does Not Preclude This Action**

> i.    The *Rooker-Feldman* Doctrine Does Not Apply Here Because Plaintiffs are Not Contesting Entry of Judgment, But Even If They Were, Defendant Has Not Provided Evidence of Universal State Court Judgments.

Defendant CACH entered state court judgments against some members of the class, but this in no way prevents class recovery.  Plaintiff is not contesting the entry of any judgment against Mr. Martinez or any class member, nor is Plaintiff attempting to engage in a *de facto* Federal court appeal of any judgments.  No judgment was ever entered against Mr. Martinez. Plaintiffs are asserting violations of Federal and state rights that arise from misrepresentations

1  made by CACH in filing state court complaints, regarding the amount of interest that CACH

2  claims a right to collect.

3  The scope of the *Rooker-Feldman* doctrine is limited to preclusion of suits based on

4  "injuries caused by state-court judgments…" *Exxon Mobil Corporation v. Saudi Basic Industries*

5  *Corporation*, 544 U.S. 280, 284 (2005).  Here, Plaintiff does not claim any injuries caused by

6  entry of a state court judgment, or even mention a state court judgment.  Plaintiff does not seek to

7  set aside a state court judgment against anyone, contest any action by a state court, or seek to

8  modify any outcome or finding by a state court.  Plaintiff only claims a right to damages by class

9  members based on misrepresentations made by CACH in a state court complaint, regardless of

10  whether or on what terms a state court judgment may have been entered after that point.  The

11  *Rooker-Feldman* doctrine is simply inapposite.

12  Even were the *Rooker-Feldman* doctrine to apply, CACH has not provided the

13  information necessary to apply the doctrine.  They have not provided any evidence of the state

14  court judgments, the number of these judgments, or the size of the class.  Plaintiffs are left to

15  guess as to how many judgments were entered against class members, if any, and for what

16  percentage of the class this might be the case.  CACH also fails to specify how many of these

17  judgments, if any, have become final.

18  Even if CACH were to provide all of this information and the Court were to find that the

19  *Rooker-Feldman* doctrine precludes suit for those class members, this would merely reduce the

20  size of the class.  It would not be a basis to dismiss the entire action, or even the class portion of

21  the action.  Under *Exxon*, only final state court judgments are subject to the *Rooker-Feldman*

22  doctrine. *Exxon, supra,* 544 U.S. at 292.  There is simply no evidence, or even a claim, by CACH

23  that all of the potential class members were subject to final state court judgments, on the date this

24  action was filed, on the debts CACH sued upon.

25      ii.    <u>*Rooker-Feldman* Does Not Apply To FDCPA Suits Based on Collections</u>

26  <u>Efforts Not Linked to a State Court Judgment</u>

27  In 2005, the United States Supreme Court found in *Exxon Mobil Corporation v. Saudi*

28  *Basic Industries Corporation*, that the *Rooker-Feldman* doctrine only applied to claims brought

1    by state court losing parties, claiming injury based on the resulting state court judgment, which

2    became final before the federal claim was filed, and which seek to review and reject these

3    judgments. *Exxon, supra,* 544 U.S. at 284.

4       The Ninth Circuit applied *Exxon* in *Carmona v Carmona*, and found that:

5       A suit brought in federal district court is a "de facto appeal" forbidden by *Rooker-Feldman* when "a federal plaintiff asserts as a legal wrong an allegedly erroneous

6       decision by a state court, and seeks relief from a state court judgment based on that

7       decision." In contrast, if a plaintiff "asserts as a legal wrong an allegedly illegal
        act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction."

8

9    *Carmona v. Carmona,* 603 F.3d 1041, 1050 (9th Cir. 2010), citing *Kougasian v. TMSL, Inc.*, 359

10   F.3d 1136, 1140 (9th Cir. 2004). Plaintiff, here, does not claim that any state court judgment is in

11   error; in fact there is no state court judgment against him, and the Complaint makes no mention

12   of any state court judgment against any class member.

13      The requirement that the Plaintiff seek to review and reject a prior state court judgment

14   has been called a *de facto* appeal, and has been held to occur when the earlier state court judgment

15   and the later federal claim are "inextricably intertwined." This is only the case in a very narrow

16   set of circumstances.

17      In *Druther v. Dean William Hamilton et al*, the Court found that:

18      A federal claim is "inextricably intertwined" with a state court judgment when "the

19      federal claim succeeds only to the extent that the state court wrongly decided the
        issue before it." *Lemonds v. St. Louis County*, 222 F.3d 488, 493 (8th Cir. 2000).

20      The contours of the inextricable intertwined standard are (1) a final state court
        judgment, (2) the plaintiff complains of an injury from that judgment, and (3) the

21      complaint requires review or rejection of the state court judgment. If an
        independent federal claim will not disturb a state court judgment, then that claim

22      may go forward, even though the federal court may reach a legal conclusion
        contrary to one underlying the state court judgment.

23   *Druther v. Dean William Hamilton et al*, 2009 U.S. Dist. LEXIS 112187, 8-9 (W. Dist. Wash

24   2009).

25      Here, Plaintiff, who has no state court judgment against him, filed a claim based solely on

26   misrepresentations made in state court complaints. Plaintiff claims that CACH became liable

27   immediately, before entry of any judgment. Plaintiff does not even mention a state court

28

1  judgment, much less claim any damages based on a state court judgment. The FDCPA is a strict

2  liability statute that does not require actual damages, and Plaintiff is not required to show any

3  such damages by the class in order for the class to recover. 15 USC 1692k(a)(2)(B). Plaintiff

4  does not ask the Court to overturn or reject any state court judgment, or take any action as to any

5  judgment against any class member. All of the state court judgments claimed by CACH will be

6  undisturbed by this action.

7       While Plaintiff makes no claim regarding any state court judgment, Plaintiff does claim

8  liability by CACH for behavior that occurred at the outset of collection lawsuits filed by CACH,

9  by making misrepresentations in filing the complaint. In the Ninth Circuit, FDCPA claims based

10  on litigation-related behavior that occurred prior to entry of a state court judgment have been held

11  outside the scope of the *Rooker-Feldman* doctrine.   In *Druther v. Dean William Hamilton et al*,

12  the Court found that:

13       Since *Exxon*, the courts which have considered the applicability of the *Rooker-*
        *Feldman* doctrine to the situation where creditors obtain a judgment in state courts
14       but subsequently have their debt collection practices challenged under the FDCPA
        in federal court, have concluded that when the FDCPA plaintiff is not challenging
15       the validity of the debt, but rather the collection practices of the creditor, the
        FDCPA claim is independent from the state court collection action and the federal
16       court has subject matter jurisdiction over that FDCPA claim.

17

18  *Druther, supra,* 2009 U.S. Dist. LEXIS 112187 at 9-10; *see also Todd v. Weltman, Weinberg &*

19  *Reis Co., L.P.A.*, 434 F.3d 432 (6th Cir. 2006); *Senftle v. Landau,* 390 F. Supp.2d 463 (D. Md.

20  2005); *Jenkins v. General Collection Co.,* 538 F. Supp.2d 1165 (D. Neb. 2008).

21       As recently as April 4, 2011, California Federal courts have come to the same result. In

22  *Blaxill v Arrow Financial Services, LLC*, the Court found that *Rooker–Feldman* did not apply to

23  claims of FDCPA violations that occurred prior to entry of a default judgment, as "as Blaxill is

24  neither complaining of an injury caused by the Superior Court's entry of a default judgment nor

25  seeking review and rejection of that judgment. Instead, she is complaining of an injury caused by

26  Defendants' alleged violations of the FDCPA." *Blaxill v Arrow Financial Services, LLC,* 2011

27  US Dist LEXIS 41010, 2 (N.D. Cal. 2011).

28

1    This holding is in keeping with recent decisions here in the Southern District.  In *Lange v*
2  *CIR Law Offices*, the Court found that FDCPA claims regarding the methods of collecting a debt,
3  which did not attack a prior state court judgment were not subject to the *Rooker-Feldman*
4  doctrine. *Lange v CIR Law Offices*, 2010 US Dist LEXIS 63419, 5 (S.D. Cal. 2010).  Regarding
5  similar civil rights claims, although not addressing specifically the FDCPA, the Court found in
6  *Coulter v. Murrell et al.,* that civil rights claims based on acts taken during litigation, but prior to
7  a state court dismissal, were not subject to the *Rooker-Feldman* doctrine, as the plaintiff did not
8  seek to overturn a judgment, but rather sought money damages. *Coulter v. Murrell et al.*, 2010
9  US Dist LEXIS 75152, 9-10 (S.D. Cal. 2010).

10    Courts in several other circuits have come to the same conclusion, holding that claims
11  under the FDCPA are generally not "inextricably intertwined" with underlying state court
12  judgments, and are not subject to the *Rooker-Feldman* doctrine. *See Naranjo v Universal Surety*
13  *of America*, 679 F. Supp. 2d 787, 793 (S.D. Tex. 2010), *Senfile v. Landau*, 390 F. Supp. 2d 463
14  (D. MD 2005), *Carvana v. MFG Financial*, 547 F. Supp. 2d 1219, 1223-1226 (D. Utah 2008)
15  (partially overturned on other grounds), *Jenkins v. General Collection Co*, 538 F Supp 2d 1165,
16  1171-1172 (D. Neb. 2008), and *Zimmerman v. The CIT Group, Inc. et al.*, 2008 US Dist LEXIS
17  108473, 31-21 (D. Colo. 2008).

18    As the Court found in *Druther v. Dean William Hamilton et al*, "If an independent federal
19  claim will not disturb a state court judgment, then that claim may go forward, even though the
20  federal court may reach a legal conclusion  contrary to one underlying the state court judgment."
21  *Druther, supra,* 2009 U.S. Dist. LEXIS 112187 at 9-10.  None of the claims filed in this action
22  disturb any state court judgment, and the *Rooker-Feldman* doctrine does not apply per se.

23          iii.    Even if *Rooker-Feldman* Did Apply to Some Claims, It Is Not a Basis for
24                  Dismissal of This Action

25    CACH claims that CACH has final state court judgments against some of the members of
26  the class.  If we assume *arguendo* that *Rooker-Feldman* did apply to class members who have
27  state court judgments by CACH against them, this still would not be a basis for dismissing this
28  action.

---

12

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

3:10-cv-01625-DMS-JMA

First, under *Exxon*, only judgments which were final on the date this complaint was filed would fall under *Rooker-Feldman*. *Exxon, supra,* 544 U.S. at 292. There is no indication of how many state court judgments CACH has against class members, much less how many were final judgments on the date this action was filed. CACH does not provide any real notion as to the number of judgments, or even as to the size of the class, for that matter.

What we can safely assume is that not all members of the class had a final judgment against them on the date this action was filed. At the very least, some of them had cases pending in state court, or had cases that were dismissed. This means that even if *Rooker-Feldman* applies to claims of class members with final state court judgments, there is a remaining class of claimants whose claims are not precluded, and this action would proceed based on their claims.

CACH also fails to counter that Mr. Martinez, the lead Plaintiff, has no judgment against him. His claims are not subject to *Rooker-Feldman* under any circumstance.

CACH's claim of preclusion under *Rooker-Feldman* is without any merit, and fails the tests set out in *Exxon, Carmona, Druther* and *Blaxill*. Even were this not the case, the best CACH could hope for under *Rooker-Feldman* is to reduce the size of the class, which is not a basis to dismiss this action.

## C. Defendant's Motion to Dismiss Pursuant to Rule 12(B)(6) Must Be Denied Because Plaintiff Pleads a Sufficient Facts for Each Cause of Action.

The Federal rules require that a Complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001). The Rule 8 standard contains "a powerful presumption against rejecting pleadings for failure to state a claim" and thus a "motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). The "issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted." *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

3:10-cv-01625-DMS-JMA

1       Accordingly, under Rule 12(b)(6) a complaint should not be dismissed "unless it appears

2   beyond doubt that plaintiff can prove no set of facts in support of her claim which would entitle

3   her to relief." *Lewis v. Telephone Employees Credit Union,* 87 F.3d 1537, 1545 (9th Cir. 1996).

4   When determining the legal sufficiency of a complaint, all "allegations of material fact are taken

5   as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut.*

6   *Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).   Furthermore, the complaint need not contain

7   detailed factual allegations   *Mendiondo v. Centinela Hosp. Medical Center*, 521 F.3d 1097,

8   1104 (9th Cir. 2008)   As such, grating a motion to dismiss "is proper only where there is no

9   cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal

10  theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).   To survive a motion to dismiss

11  the complaint must "state enough facts to state a claim to relief that is plausible on its face." *Bell*

12  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

13      Plaintiff Mr. Martinez plead facts with sufficient particularity to sustain claims of

14  fraudulent transfer and constructive transfer.  In its motion to dismiss, CACH misguidedly relies

15  on *Seror v Stone,* a bankruptcy court opinion, and on *Patterson v Missler*, a 1965 state court

16  opinion for the proposition that Plaintiff's allegations are inadequate.   *See Secor v Stone*, 2011

17  Bankr. LEXIS 291 (C.D. Cal. 2011); *Patterson v Missler,* 238 Cal.App.2d 759 (1965).

18      Ironically, CACH also insisted on a protective order on the very documents containing the

19  facts that CACH now insists are pleaded too generally.  CACH made great efforts to ensure that

20  the financial representations made in CACH's documents before this Court under seal would not

21  be available to the public.  Now CACH claims that Plaintiff's First Amended Complaint, which is

22  a public document, does not sufficiently state the very factual matter that CACH is

23  simultaneously attempting to shield from public view.

24      Plaintiff is more than willing to amend his Complaint to more specifically allege which

25  assets and which amounts CACH fraudulently transferred, to the degree that CACH made those

26  documents available. The issue here, though, is to which degree Plaintiff can safely do so without

27  running afoul of the protective order CACH itself demanded before releasing the documents.

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
3:10-cv-01625-DMS-JMA

1   Regardless, Plaintiff has in fact stated with sufficient particularity Plaintiff's claims of actual and

2   fraudulent transfer, as shown below.

3            i.      Defendant's Reliance on *Patterson* and *Seror* is Misguided

4            There is a heightened standard of scrutiny that applies to certain claims of fraudulent

5   transfer.   In some fraudulent transfer complaints Plaintiff are required to state that CACH

6   transferred assets without fair consideration. However, contrary to CACH's claims, suchstandard

7   does not apply here under either *Patterson* or *Seror,* as both cases are distinguishable. Even if

8   they were not distinguishable, Plaintiff's Complaint adequately pleads that CACH transferred

9   assets without fair consideration.

10          First, *Patterson*, dealt with claims brought under California Civil Code sections 3439.04

11  and 3439.05. *Patterson v Missler*, 238 Cal.App.2d 759, 763 (1965). *Patterson*, however, was

12  decided in 1965, prior to substantial amendments to California Civil Code section 3439.04

13  ("Section 3439.04"). (citation) Section 3439.04(a)(2)(A) now allows claims of fraudulent transfer

14  if there is either actual fraud and a transfer, regardless of the consideration received, Or under

15  Section 3439.04(a)(2)(B), if there was a transfer with no receipt of "reasonably equivalent value"

16  and the defendant "was engaged or was about to engage in a business or a transaction for which

17  the remaining assets of the debtor were unreasonably small in relation to the business or

18  transaction." The language in *Patterson* requiring a transfer without "fair consideration" was

19  superseded by Section 3439.04(a)(2)(A).

20          In any event, Plaintiff did allege a transfer without fair consideration.  In Plaintiff's First

21  Amended Complaint, Plaintiff alleges that "SQUARETWO caused Defendant CACH to transfer

22  assets from CACH to SQUARETWO while holding all liabilities related to such assets..." (FAC

23  ¶ 59)  Transferring CACH's profits from purchased assets to SquareTwo while continuing to hold

24  the liabilities incurred purchasing the assets is hardly a "fair market value" transaction.

25          Even were this not the case, Plaintiff has clearly claimed fraudulent intent, and a transfer

26  of assets, which is all that is required under Section 3439.04(a)(2)(A).  Furthermore, by alleging

27  that SquareTwo is an alter ego of CACH, and that the transfer has rendered CACH insolvent,

28

1   Plaintiff alleged facts pertaining to the "badges of fraud" incorporated into Section 3439.04(b),

2   particularly Section 3439.04(b)(1), (5), (8) and (9).

3       Defendant's use of *Secor* is similarly distinguishable. In *Secor*, the Plaintiff, a bankruptcy

4   trustee, simply alleged a Ponzi scheme, and thus fraudulent intent, and did nothing to tie this

5   scheme to the transfers at issue. *Secor v Stone*, 2011 Bankr. LEXIS 291, 12-13 (C.D. Cal. 2011).

6   Plaintiff Martinez in this case made it clear which assets are at issue; namely *all* of CACH's

7   assets. Plaintiff alleged that the purpose of the transfers is "avoiding liability for violations of the

8   FDCPA or Rosenthal Act or both as alleged by Plaintiff in this class action lawsuit or any other

9   litigant with similar claims as Plaintiff, or both." (FAC, ¶ 59) Plaintiff already made clear in

10  other documents filed under seal with the Court the identity and value of the transfers at issue;

11  these are excised from Plaintiff's pleadings in an attempt to comply with the protective order at

12  issue in this case. Defendant is not at all confused about which transfers or assets are at issue;

13  they list them in their moving papers. Defendant is on notice as to the exact nature of Plaintiff's

14  claims, which is the purpose and policy behind federal pleading requirements. Defendant does

15  not dispute that it transfers virtually all of its assets to its parent company, SquareTwo.

16      In error, CACH does not think that the payment of virtually all of its assets to its parent

17  company amounts to a transfer. CACH claims it owes money to its parent for "loans" for which

18  CACH cannot produce any terms, interest rate, or written agreement; and that any money paid

19  should be presumed to be at a fair market, arms' length rate. These transfers on their face

20  constitute transfers of money which are assets under California Civil Code section 3439.01(a).

21  These transfers do not "merely account for assets and liabilities", as CACH's own moving papers

22  state that the documents reflect an amount of "$248,276,812 payable to 'Parent'." This is

23  certainly an indication that that amounts were paid, as CACH now claims not to have those assets.

24  CACH appears to transfer immense sums of money to its parent company, based on nothing more

25  than a purported verbal agreement, the terms of which CACH has not been kind enough to

26  elucidate. These transfers make CACH show a negative net worth. CACH becomes insolvent,

27  unable to meet the obligations of its ongoing debt collection business. Indeed, such a custom and

28  practice, if sanctioned as legal by this court, immunizes CACH from liability for unfair, harassing

1    debt collection practices. It effectively permits CACH to allege interest usurious interest rates

2    with impunity. The facts supporting all of Plaintiff's claims are plead with particularity so as to

3    not be subject to Rule 12(b)(6).

4              ii.      Plaintiff's Complaint Pleads Sufficiently Particular Facts to Support a
                        Claim for Constructive Fraudulent Transfer
5

6             CACH admits there is no "heightened scrutiny" standard to pleading constructive

7    fraudulent transfer. In order to show a constructive fraudulent transfer, California Civil Code

8    section 3439.05 requires Plaintiff to show that CACH transferred an asset without receiving a

9    "reasonably equivalent value" in exchange, and that CACH was insolvent at that time, or became

10   insolvent as a result of the transfer.

11            Plaintiff pleads that "CACH transferred, and continues to transfer, all assets to its parent

12   SQUARETWO" and that the purpose of these transfers was "in order to avoid CACH from

13   demonstrating a 'net worth,' a clear implication that CACH is insolvent as a result of these

14   transfers." FAC, ¶ 59-60. Plaintiff further alleged that CACH transferred its assets and retained

15   the liabilities, hardly a "fair market value" transaction. *Id.* There is no "reasonably equivalent

16   value" received when CACH cannot point to anything received from SquareTwo other than

17   "software services" and unspecified and unwritten "loans." If this were all CACH knew about

18   Plaintiff's claims, this would be sufficient to meet the notice and plausibility requirements of

19   federal pleadings. CACH, though, both knows more, and has submitted documents to Plaintiff

20   and to this Court under seal that are far more specific. CACH refers to these documents in their

21   moving papers. There is no surprise here. The pleadings are not so general that CACH cannot

22   prepare their defenses. There is only an attempt by Plaintiff to plead his claims generally enough

23   to respect CACH's protective order regarding the documents that form the basis for Plaintiff's

24   claims.

25            CACH's arguments, again, really come down to disputing that its payments to SquareTwo

26   are not for market value. This is a question that can only be answered after discovery, and not at

27   the pleading stage. CACH has been presented in this action with opportunities to provide

28   evidence to the contrary, under seal, and has failed to do so. CACH has provided no written

---

1  agreement, for example for the nearly quarter-billion dollars in payments to SquareTwo for

2  "software services" and "loans."

3           iii.     Plaintiff's Complaint Pleads Sufficiently Particular Facts to Support a
                     Claim for Alter Ego Under the Single Enterprise Doctrine
4

5           In order to successfully plead liability under an alter ego theory, the Plaintiff must allege

6  facts showing the Court should disregard corporate protections in order to prevent fraud or

7  injustice. *Meadows v. Emett & Chandler*, 99 Cal.App.2d 496, 499 (1950). The Plaintiff must

8  allege: (1) a unity of interest and ownership between the entity and its owner such that the

9  separate personalities of the corporation and shareholder do not in reality exist, and (2) an

10 inequitable result if the corporate veil is not pierced. *Sonora Diamond Corp. v. Superior Court,*

11 83 Cal.App.4th 523, 538, 99 Cal.Rptr.2d 824 (2000); *Virtualmagic Asia, Inc. v. Fil-Cartoons,*

12 *Inc.*, 99 Cal.App.4th 228, 244-245 (2002). The theory of alter ego liability dictates that "equity

13 will lift the corporate mask and identify the person behind it when a business corporation

14 reorganizes under a new name, with practically the same stockholders and directors, to carry on

15 the former business with the design of avoiding the liabilities of the original company." *Talbot v.*

16 *Fresno-Pacific Corp.* 181 Cal.App.2d 425, 432 (1960).

17         Whether alter ego applies is a question of fact which necessarily varies according to the

18 circumstances of each case. *Institute of Veterinary Pathology, Inc. v. California Health*

19 *Laboratories, Inc.* 116 Cal.App.3d 111, 119 (1981). The court must take into consideration a

20 variety of factors and determine which are pertinent to the trial court's determination under the

21 particular circumstances of each case. *Associated Vendors, Inc. v. Oakland Meat Co.*, 210

22 Cal.App.2d 825, 838 (1962). The court in *Associate Vendors, Inc.* summarized that among these

23 factors the following are included:

24         Commingling of funds and other assets; failure to segregate funds of the separate
           entities; the unauthorized diversion of corporate funds or assets to other than
25         corporate uses; the treatment by an individual of the assets of the corporation as
           his own; the failure to obtain authority to issue stock or to subscribe to or issue the
26         same; the holding out by an individual that he is personally liable for the debts of
           the corporation; the failure to maintain minutes or adequate corporate records, and
27         the confusion of the records of the separate entities; the identical equitable
           ownership in the two entities; the identification of the equitable owners thereof
28

---

18

1   with the domination and control of the two entities; identification of the directors and officers of the two entities in the responsible supervision and management;

2   sole ownership of all of the stock in a corporation by one individual or the members of a family; the use of the same office or business location; the

3   employment of the same employees and/or attorney; the failure to adequately capitalize a corporation; the total absence of corporate assets, and

4   undercapitalization; the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another

5   corporation; the concealment and misrepresentation of the identity of the responsible ownership, management and financial interest, or concealment of

6   personal business activities; the disregard of legal formalities and the failure to maintain arm's length relationships among related entities; the use of the corporate

7   entity to procure labor, services or merchandise for another person or entity; the

8   diversion stockholder or other person or entity, to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the

9   assets in one and the liabilities in another; the contracting with another with intent to avoid performance by use of a corporate entity as a shield against personal

10  liability, or the use of a corporation as a subterfuge of illegal transactions; and the

11  formation and use of a corporation to transfer to it the existing liability of another person or entity.

12

13  *Associated Vendors, Inc. v. Oakland Meat Co.,* (1962) 210 Cal.App.2d 825, 838-840.

14      No single factor is determinative, and a court must examine all the circumstances to

15  determine whether to apply the doctrine. *Talbot, supra,* 181 Cal.App.2d at 432.  Plaintiff's FAC

16  sufficiently alleges a number of these factors.

17      Plaintiff alleges that the CACH is nothing more than a mere shell, instrumentality or

18  conduit for another corporation so that Defendants may perpetuate an unjust a fraudulent business

19  practice.  FAC, ¶ 63.  Plaintiff alleges that Defendants share an identical ownership structure

20  which results in a single set of individuals with supervisorial, managerial and ownership interest

21  of both entities.  FAC, ¶ 64.  Plaintiff further alleges that Defendants' corporate relationship fails

22  to result in SquareTwo maintaining an arms' length relationship with CACH. FAC, ¶ 65.

23  Therefore, Defendant SquareTwo maintains complete control over CACH's finances, policies,

24  and business practices.  *Id.*   Finally, Plaintiff alleges that sole purpose of the Defendants'

25  corporate relationship is to facilitate the manipulation of assets and liabilities between entities so

26  as to concentrate the assets in one and the liabilities in another, thereby eliminating class action

27  liability under the FDCPA.  FAC, ¶¶ 66-67.

28

1        In support of its motion to dismiss Plaintiffs' alter ego claims, Defendant cites *Bowoto v.*

2   *Chevron Texaco Corp.,* 312 F.Supp.2d 1229 (N.D. Cal. 2004), for the proposition that a finding of

3   alter ego is not supported by mere allegations that Defendant have overlapping, officers, directors

4   and employees.  Defendant's reliance on the holding in *Bowoto* is misguided given that the court

5   was ruling on a motion for summary judgment, which has a starkly different standard of review.

6   *Bowoto, supra,* 312 F.Supp.2d at 1234.  *Bowoto* is also distinguishable because, as articulated

7   above, Plaintiffs plead many more facts and factors showing the existence of an alter ego

8   relationship between Defendants.

9        Plaintiff's Complaint sufficiently pleads causes of action for fraudulent transfer,

10  constructive fraudulent transfer, and alter ego under Rule 12(b)(6).  Therefore, the Court should

11  deny Defendant's motion to dismiss in its entirety.

12       **D. In the Alternative, Should the Court Find Any Pleading Inadequacies, The Court**

13              **Should Grant Plaintiff Leave to Amend.**

14       If this Court finds inadequacies in Plaintiff's complaint, the Court should grant Plaintiff

15  leave to amend his complaint.  The Court should liberally grant leave to amend if there is any

16  possibility that a defect in Plaintiff's complaint could be cured by additional or more specific

17  factual allegations.  *See Chung Hak Hong v. U.S. Dept. of Homeland Security Citizenship and*

18  *Immigration Services,* 662 F.Supp.2d 1195, 1198 (C.D. Cal. 2009).

19       Plaintiff is capable of amending to plead even more specific facts regarding Defendant's

20  fraudulent transfer if the Court would loosen the terms of the protective order governing

21  documents containing such information. As a matter of practicality, should the Court wish

22  Plaintiff to amend under the current protective order, it is difficult to see how filing a complaint

23  under seal, for example, would solve anything.  These claims are on a classwide basis, which

24  when certified will have to be explained to potential class members. Secrecy is a poor mix with a

25  class action complaint filed in the interest of the public.

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# IV.

## CONCLUSION

Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss pursuant to Rule 12(b)(1) and 12(b)(6) in its entirety.  In the alternative, Plaintiff requests the Court grant leave to amend the Complaint.

Respectfully submitted,

Dated: May 20, 2011

**NICHOLAS & BUTLER, LLP**

By:   s/Matthew B. Butler_____
      Matthew B. Butler

**RECORDON & RECORDON**
Stephen G. Recordon

**ROONEY & LICKEL**
Clinton Rooney

Attorneys for PLAINTIFFS

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
3:10-cv-01625-DMS-JMA