UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| JESUS MARTINEZ, | CASE NO. 10CV1625 DMS (JMA) |
|---|---|
| Plaintiff, vs. CACH, LLC et al., Defendants. | **ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT CACH, LLC'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |

Pending before the Court is Defendant CACH, LLC's motion to dismiss the First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 31.) For the following reasons, the Rule 12(b)(1) motion is denied and the Rule 12(b)(6) motion is denied in part and granted in part.

**I.**

**BACKGROUND**

Plaintiff is alleged to have incurred debt to Bank of America, N.A. sometime prior to December 2009. (FAC ¶ 18, Ex. B.) The debt was subsequently assigned or transferred to CACH for collection. (*Id.* at ¶ 21.) On December 8, 2009, CACH filed a Complaint against Plaintiff in San Diego Superior Court in an effort to collect the outstanding debt. (*Id.* at ¶ 22, Ex. A.) In that Complaint, CACH claimed a right to 24.50 percent annual fixed interest rate on the alleged debt. (*Id.* at ¶ 24, Ex. A.) Plaintiff alleges CACH violated the Fair Debt Collection Practices Act ("FDCPA")

1  and the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") when, as a custom and
2  practice, it sued him and other similarly situated individuals for excessive interest rates it did not have
3  a legal right to collect under statute or contract.

4  Plaintiff filed a Complaint against CACH on August 4, 2010. (Doc. 1.) The Court
5  subsequently granted Plaintiff's motion for leave to file the FAC, which Plaintiff filed on April 4,
6  2011. (Docs. 28-29.) The FAC states five claims for relief on behalf of a putative class of individuals:
7  (1) violations of the FDCPA, (2) violations of the Rosenthal Act, (3) actual fraudulent transfer, (4)
8  constructive fraudulent transfer, and (5) alter ego. (Doc. 29.) On April 25, 2011, Defendant CACH
9  filed the instant motion to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(1) and
10 12(b)(6). (Doc. 31.) Plaintiff filed an opposition and Defendant filed a reply. (Docs. 33-34.)

**II.**

**DISCUSSION**

**A.    12(b)(1) Motion to Dismiss**

14  A defendant may move to dismiss an action under Rule 12(b)(1) if the Court lacks subject
15 matter jurisdiction over the action. On a motion to dismiss pursuant to Rule 12(b)(1), the Court "is
16 not restricted to the face of the pleadings, but may review any evidence, such as affidavits and
17 testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United*
18 *States*, 850 F.2d 558, 560 (9th Cir. 1988). Defendant moves to dismiss the action for lack of subject
19 matter jurisdiction on two bases: (1) that the instant action was rendered moot by Defendant's
20 unaccepted offer of judgment and (2) the *Rooker-Feldman* doctrine.

**1.    Offer of Judgment**

22  In a class action against a debt collector for violation of the FDCPA, each named plaintiff is
23 entitled to actual damages and additional damages in an amount of up to $1,000.00, as the court may
24 allow. 15 U.S.C. § 1692k(a)(2)(A), (B). The court may award damages "for all other class members,
25 without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum
26 of the net worth of the debt collector." *Id.* at § 1692k(a)(2)(B). The Rosenthal Act, as amended,
27 expressly incorporates the remedies permitted under the FDCPA into its provisions and courts have
28 found this includes the class action mechanism permitted under the FDCPA. Cal. Civ. Code §

1788.17; *see also, e.g., Gonzales v. Arrow Fin. Servs., LLC*, 233 F.R.D. 577, 580-81 (S.D. Cal. 2006); *McDonald v. Bonded Collectors, L.L.C.*, 233 F.R.D. 576, 577 (S.D. Cal. 2005); *Palmer v. Stassinos*, 233 F.R.D. 546, 547-48 (N.D. Cal. 2006). Defendant argues, however, that if the Rosenthal Act is deemed to have incorporated the class action mechanism set forth in the FDCPA, then it should also be deemed to have incorporated the limitations on damages recoverable by the class set forth in § 1692k(a)(2)(B) of the FDCPA. The Court agrees and so assumes for purposes of this motion.

Rule 68 provides that a defendant "may serve on [a plaintiff] an offer to allow judgment on specified terms, with the costs then accrued." Fed. R. Civ. P. 68(a). If accepted, the judgment is entered against the defendant. If rejected, the offer is deemed withdrawn. Importantly, if the judgment the plaintiff ultimately obtains "is not more favorable" than the defendant's offer, the plaintiff "must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d). On January 21, 2011, CACH made an offer that would allow judgment to be taken against it in favor of Plaintiff in the amount of $2,100.00 and in favor of the putative class in the amount of $500.00, both together with reasonable fees and costs. (Johnson Decl. Ex. 1.) With the FDCPA's damages limitations in mind, CACH argues this Court lacks subject matter jurisdiction over this action because CACH's offer of judgment offered Plaintiff and the putative class all the relief they could possibly obtain in this action and was not accepted. According to CACH, the offer of $2,100.00 to Plaintiff exceeds the statutory damages he is individually entitled to under the FDCPA and the Rosenthal Act, and the offer of $500.00 to the putative class exceeds one percent of CACH's net worth, which it asserts is presently negative. CACH claims Plaintiff's failure to accept the offer renders this action moot and deprives this Court of Article III jurisdiction over the action due to the lack of a present case or controversy. Article III of the Constitution prohibits federal courts from hearing cases which are not based on "actual, ongoing cases or controversies." *Wolfson v. Brammer*, 616 F.3d 1045, 1053 (9th Cir. 2010)(quotation omitted). The party asserting mootness bears the burden of showing that there is no effective relief remaining for the court to provide. *GATX/Airlog Co. v. U.S. Dist. Court for N. Dist. of Cal.*, 192 F.3d 1304, 1306 (9th Cir. 1999).

As CACH acknowledges, courts have often been hesitant to permit a defendant to render a putative class action moot by making an offer of judgment to the named plaintiff only, whether before

1  or after the filing of a motion to certify the class. *See, e.g., Deposit Guaranty Nat'l Bank v. Roper*, 445
2  U.S. 326, 339 (1980); *Weiss v. Regal Collections, Inc.*, 385 F.3d 337, 347-49 (3d Cir. 2004). CACH
3  argues, however, that because it made an offer of judgment to the putative class in addition to the
4  named Plaintiff, the present case is distinguishable from these cases. Although CACH did make an
5  offer of judgment to the putative class in the amount of $500.00, the Court does not find the offer
6  rendered the instant action moot. Where the amount of damages the putative class may eventually be
7  entitled to is dependent upon the net worth of the defendant, it would be inequitable to permit a
8  defendant to render an action in which the plaintiff alleges the defendant made fraudulent transfers of
9  assets to an alter ego in order to falsify its net worth moot by making an offer of judgment to the class
10 based upon defendant's representation of its allegedly falsified net worth. Accordingly, the claims
11 stated by Plaintiff on behalf of himself and the putative class here are not rendered moot merely
12 because Plaintiff did not accept the minimal offer of judgment made to the putative class by CACH.

13      **2.     *Rooker-Feldman* Doctrine**

14      CACH further argues the instant action is an attempt to challenge the validity of an underlying
15 state court judgment in violation of the *Rooker-Feldman* doctrine. *See Rooker v. Fid. Trust Co.*, 263
16 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The *Rooker-Feldman*
17 doctrine is intended to prevent federal district courts from hearing "cases brought by state-court losers
18 complaining of injuries caused by state-court judgments rendered before the district court proceedings
19 commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*
20 *v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "A suit brought in federal district court is a
21 'de facto appeal' forbidden by *Rooker-Feldman* when 'a federal plaintiff asserts as a legal wrong an
22 allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that
23 decision.' In contrast, if a plaintiff 'asserts as a legal wrong an allegedly illegal act or omission by an
24 adverse party, *Rooker-Feldman* does not bar jurisdiction.'" *Carmona v. Carmona*, 603 F.3d 1041,
25 1050 (9th Cir. 2010)(citations omitted).

26      CACH argues the class that Plaintiff seeks to represent includes consumers against whom
27 CACH has secured final state court judgments and that Plaintiff seeks to challenge the legitimacy of
28 the underlying state court judgments and to recover damages based upon alleged injuries resulting from

1  those judgments. CACH asserts these claims are barred by the *Rooker-Feldman* doctrine and the Court
2  therefore lacks subject matter jurisdiction to consider them. Plaintiff argues the *Rooker-Feldman*
3  doctrine does not apply here because Plaintiff and the class are not challenging the entry of judgments
4  by the state court, but are rather asserting violations of rights that arise from misrepresentations
5  regarding the amount of interest CACH had a right to collect made by CACH in filing the state court
6  complaints. Plaintiff further points out no judgment exists against him and no mention of state court
7  judgments is made in the FAC.

8  The Court agrees with Plaintiff that the *Rooker-Feldman* doctrine does not deprive it of subject
9  matter jurisdiction over the entire action at this stage in the proceedings. Plaintiff is not seeking a *de*
10 *facto* appeal of the state court judgments obtained by CACH against certain members of the putative
11 class. Rather, Plaintiff claims CACH became liable under the FDCPA and the Rosenthal Act
12 immediately upon filing of the state court complaints against Plaintiff and the putative class members
13 and that any judgments obtained by CACH against members of the putative class will remain
14 undisturbed by this action. Plaintiff's claims in the present action are therefore not inextricably
15 intertwined with any potential underlying state court judgments of putative class members. *See*
16 *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859 (9th Cir. 2008)("A federal action constitutes such
17 a de facto appeal where claims raised in the federal court action are inextricably intertwined with the
18 state court's decision such that the adjudication of the federal claims would undercut the state ruling
19 or require the district court to interpret the application of state laws or procedural rules." (citation and
20 quotations omitted)). Furthermore, CACH claims Plaintiff is asking "this Court to question the
21 validity of state court judgments to the extent that those judgments are purportedly based on an
22 improper interest rate," but fails to identify or provide any information as to any such judgment entered
23 against Plaintiff or any member of the putative class. (Reply at 7.) Accordingly, this Court is not
24 prevented from exercising subject matter jurisdiction over this action under the *Rooker-Feldman*
25 doctrine. For the foregoing reasons, Defendant's motion to dismiss the FAC pursuant to Rule 12(b)(1)
26 is denied in its entirety.

27 **B.      12(b)(6) Motion to Dismiss**

28 In the FAC, Plaintiff alleges CACH fraudulently transferred assets to its alter ego, SquareTwo

Financial Commercial Funding Corporation ("SquareTwo"), for the purpose of making its net worth zero in order to avoid liability for damages in the present action and other similar actions. In the alternative to its motion to dismiss pursuant to Rule 12(b)(1), CACH moves to dismiss Plaintiff's claims for actual fraudulent transfer, constructive fraudulent transfer, and alter ego pursuant to Rule 12(b)(6). A party may move to dismiss a claim under Rule 12(b)(6) if the claimant fails to state a claim upon which relief can be granted. The Federal Rules require a pleading to include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court, however, recently established a more stringent standard of review for pleadings in the context of 12(b)(6) motions to dismiss. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). To survive a motion to dismiss under this new standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)). The reviewing court must therefore "identify the allegations in the complaint that are not entitled to the assumption of truth" and evaluate "the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951.

### 1. Actual Fraudulent Transfer

To state a claim for actual fraudulent transfer, a plaintiff must allege a debtor defendant made a transfer or incurred an obligation "with actual intent to hinder, delay, or defraud any creditor of the debtor." Cal. Civ. Code § 3439.04(a)(1). Because a claim for actual fraudulent transfer involves an allegation of fraud or mistake, it is subject to Federal Rule of Civil Procedure 9(b), which requires a party to "state with particularity the circumstances constituting fraud or mistake" and is applied by a federal court to both federal law and state law claims. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102-03 (9th Cir. 2003). A pleading will be "sufficient under Rule 9(b) if it identifies the

circumstances of the alleged fraud so that the defendant can prepare an adequate answer." *Fecht v. Price Co.*, 70 F.3d 1078, 1082 (9th Cir. 1995)(quotation omitted). The same is true for allegations of fraudulent conduct. *Vess*, 317 F.3d at 1103-04. In other words, fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged. *Id.* at 1106 (quotation omitted).

In the FAC, Plaintiff alleges CACH transferred assets to SquareTwo. (FAC ¶¶ 55 ("Defendant SQUARETWO caused Defendant CACH to transfer assets from CACH to SQUARETWO . . ."), 56 ("CACH transferred, and continues to transfer, all assets to its parent SQUARETWO."), 60-61.) Plaintiff also alleges the transfer was "intended to hinder, delay or defraud Plaintiff and the members of the proposed classes in this action," and "Defendants attempted to conceal or remove assets from CACH's ledgers so that is could be 'judgment proof' or otherwise not liable for damages and other relief in an action such as the instant action by Plaintiff." (*Id.* at ¶ 56.) However, despite reciting the elements of a claim for actual fraudulent transfer, the allegations in the FAC do not include sufficient factual detail to state a plausible claim for relief, nor do they satisfy the heightened pleading requirements of Rule 9(b). Plaintiff does not identify any specific alleged transfers of assets or include allegations regarding the amounts, mechanisms, or timing of any such transfers. In support of his motion for leave to file a FAC, Plaintiff submitted financial documents presented to the Illinois Secretary of State and the North Carolina Department of Insurance.[1] (Doc. 21.) According to Plaintiff, these documents evidence a transfer of assets by CACH to SquareTwo. However, the allegations contained in the FAC itself lack sufficient factual detail to survive a motion to dismiss and Defendant's motion to dismiss this claim under Rule 12(b)(6) is granted.

**2.    Constructive Fraudulent Transfer**

Claims for constructive fraudulent transfer may be stated under either or both California Civil Code § 3439.04(a)(2) or § 3439.05. Section 3439.04(a)(2) provides that a transfer is fraudulent if the debtor made the transfer or incurred the obligation without receiving "a reasonably equivalent value

---

[1]    CACH requests the Court to take judicial notice of Plaintiff's motion for leave to file a FAC. (Doc. 21.) Because Plaintiff's motion is a publicly filed document and is capable of ready and accurate determination, the Court may take judicial notice of it pursuant to Federal Rule of Evidence 201. Accordingly, Defendant's request is granted.

in exchange" and either:

> (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction . . . [or] (B) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Section 3439.05 states:

> A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

A claim of constructive fraudulent transfer is not subject to the heightened pleading requirements of Rule 9(b). However, a plaintiff must still state a claim for relief that is plausible on its face. Here, Plaintiff has failed to include sufficient factual detail in the FAC to state a claim for relief for constructive fraudulent transfer that is plausible on its face.

In addition to the allegations stated in support of Plaintiff's claim for actual fraudulent transfer, Plaintiff alleges "CACH does not receive reasonably equivalent value of assets transferred to parent SQUARETWO for the liabilities CACH has incurred in exchange for such transfer of assets." (FAC at ¶ 61.) However, as stated above, the FAC includes no additional factual allegations regarding any transfers of assets or whether CACH received any value in exchange for any such transfers, let alone a reasonably equivalent value. Accordingly, Defendant's Rule 12(b)(6) motion to dismiss this claim is granted.

**2. Alter Ego**

CACH also argues Plaintiff has not sufficiently pled a claim that SquareTwo is the alter ego of CACH and an alter ego relationship is not created merely because a parent corporation contributes funds to a subsidiary, which is what CACH asserts occurred here. In the FAC, Plaintiff alleges the relationship between CACH and SquareTwo "results in CACH being nothing more than an instrument and/or conduit of SQUARETWO in the pursuit of the single business venture and/or enterprise of debt collection." (*Id.* at ¶ 63.) Plaintiff further alleges the companies "share common directors, officers, and employees; and jointly benefit from transactions entered into by one[another]," and that SquareTwo possesses "control over defendant CACH's finances, policies, and business practices."

(*Id.* at ¶¶ 64-65.)

> In California, two conditions must be met before the alter ego doctrine will be invoked. First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone. Among the factors to be considered in applying the doctrine are commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other. Other factors which have been described in the case law include inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers.

*Sonora Diamond Corp. v. Superior Court of Tuolumne Cnty.*, 83 Cal. App. 4th 523, 538-39 (2000)(citations and quotations omitted). Here, Plaintiff's allegations of an alter ego relationship between CACH and SquareTwo are sufficient to state a plausible claim and to survive a Rule 12(b)(6) motion to dismiss. CACH's motion to dismiss this claims pursuant to Rule 12(b)(6) is denied.

### III.
### CONCLUSION

For the foregoing reasons, Defendant's Rule 12(b)(1) motion to dismiss is denied and its Rule 12(b)(6) motion to dismiss is denied in part and granted in part. Plaintiff requests leave to file an amended Complaint to rectify any deficiencies in the FAC found by the Court. The Court grants Plaintiff leave to file an amended Complaint consistent with this Order on or before July 8, 2011. Should Plaintiff feel it is necessary to file any portion of the amended Complaint under seal pursuant to the Protective Order in place in this action, he may move for leave of the Court to file under seal and the Court will determine the propriety of such motion at that time.

**IT IS SO ORDERED.**

DATED: June 27, 2011

_____
HON. DANA M. SABRAW
United States District Judge